Birdie Amsterdam, J.
In this action Toy plaintiff husband for divorce, he requests custody of the surviving child of the marriage, and an adjudication that he is not the father of the child referred to in paragraphs “Fifth” and “Sixth” of the complaint.
Defendant wife does not deny the allegations of the complaint, but interposes a counterclaim for reimbursement for the support of their first-born child (now deceased) and of the afore-mentioned surviving child, whose custody she also seeks.
At the conclusion of the trial herein, decision was reserved on plaintiff’s motion to dismiss the counterclaim. With respect to plaintiff’s action, an oral decision was rendered and dictated into the record, granting plaintiff a judgment of absolute divorce, but awarding custody of the infant, referred to as the “surviving child ” to defendant, with broad rights of visitation to plaintiff; directing plaintiff to pay, for said child’s support, the sum of $15 per week, retroactive to April 12, 1961; and further adjudicating the issue of paternity of the child referred to in paragraphs “Fifth” and “Sixth” of the complaint.
Considering the unusual facts applicable to the issues involved on defendant’s counterclaim, I find the undisputed facts to be that plaintiff, an American, was a medical student attending the University of Rome, Italy. He met defendant in Rome, advised her that he would remain there to complete his studies, and on July 4,1951, they were there married and lived together. They had the benefit of some financial assistance from their respective parents. A child was born to them on January 19, 1952. In June of 1952 they came to New York and stayed with defendant’s parents, intending to spend the Summer here but to return to Rome in the Fall so as to enable plaintiff to continue his medical *464 studies there. Defendant, however, refused to accompany him. He therefore returned alone. The following June, at the termination of his school semester, plaintiff again returned to Hew York and the parties resumed their marital life together. On August 17, 1953, their second child (whose custody is sought) was born. Plaintiff renewed his request that the defendant return with him to Italy, with the children. Upon her continued refusal, he deferred his return there until December of 1953. During the intervening months between June and December of 1953, he obtained employment here with average earnings of approximately $100 per week. It is conceded that most of these earnings were given to defendant. In December of 1953 he left for Borne with the understanding that he would be back here in the Summer of 1954. However, he did not return to Hew York until August of 1958, almost five years later. He admits that he did not complete his medical studies, that he did not obtain a medical degree, that in 1954 he moved from Borne to another part of Italy without apprising defendant thereof; that he did not contribute during this period to the support and maintenance of the children or of defendant.
Plaintiff testified that from December of 1953 until August of 1958 he received allowances of $50 to $80 monthly from his father and earned a little money by tutoring in English; that since Hovember of 1958, he has been gainfully employed in Hew York as a laboratory technician with annual earnings amounting to $4,200 until March of 1961, and $4,800 per annum since then.
Defendant testified that their first-born was congenitally malformed mentally and physically and given a life expectancy of five to six years. She admits that she refused to return to Italy and urges as reason therefor their lack of funds. She testified further that she urged plaintiff to give up his medical studies and that he support her and the children, which he refused; that he failed to return here for the Summer recess of 1954 contrary to their understanding; that she endeavored to locate him and to compel him to support the children; that toward that end she enlisted the services of an attorney who wrote to plaintiff and to the Universities of Borne and Haples. She also applied to the Legal Aid Society, the Hational Desertion Bureau, the State Department, the Embassy in Borne, and instituted a proceeding in the Domestic Belations Court of the City of Hew York, which issued a warrant for his arrest in 1956. She had no success since plaintiff could not be located, nor could his whereabouts be ascertained. Defendant testified further that to support and maintain the children, she was compelled to *465 work, which necessitated the hiring of help to care for the children in her absence; that she expended for the children’s support and maintenance, such as board, clothing, medical care, drugs and other necessaries, the following sums of money: $2,260 in 1954, $4,168 in 1955, $4,363 in 1956, $3,568 in 1957 (when she had to place the older child in an institution), $3,576 in 1958 (this included $660 for funeral expenses for the older child who passed away on January 16, 1958), $3,133 in 1959, $2,006 in 1960, $2,006 in 1961, aggregating upwards of the $23,559.38 in her ad damnum request.
Plaintiff resists the counterclaim and contends that the defendant voluntarily supported the children without expectation of reimbursement from plaintiff; that by reason thereof there is no right to reimbursement from him. In support of this view the plaintiff urges, as controlling, the case of Smith v. Smith (261 App. Div. 930), wherein the court stated: “ Under the facts in the case the failure to take steps to obtain reimbursement for support of the child for a period of more than seven years raised a strong presumption that the support was given voluntarily, without expectation of reimbursement from the father. In the opinion of the court that presumption is not overcome by the proof adduced on behalf of the plaintiff. * * * The whole evidence requires a finding that the plaintiff did not furnish support for her child with expectation of reimbursement therefor from the appellant.”
Plaintiff further argues that although it is primarily a husband’s duty to support his children, that duty was temporarily suspended because, in refusing to accompany him to Italy, the defendant prevented him from having the love and affection of his children. In this aspect plaintiff relies on Goldner v. Goldner (284 App. Div. 961, affd. 309 N. Y. 675), where the Appellate Division of this Department reversed an order of Special Term, which dismissed defendant husband’s motion to eliminate support provisions for children contained in a separation decree and held: “ in view of the fact that the children have been removed to a foreign country for a period of years over the objections of the husband, we think upon the facts here presented that his application for relief from the provisions for the support of the children until they are returned to this jurisdiction, where he may resume his right of visitation, should have been granted to the extent of a temporary suspension of payments.” Patently, the fact pattern in the case at bar differs from that involved in the Smith and Goldner cases (supra). The facts in the case sub judice, are inapposite. It is abundantly clear on the record herein, and contrary to plaintiff’s *466 contentions, that the defendant did indeed expect plaintiff to support his children and to reimburse her for their support necessitated by his failure to do so, and that the children were not removed from the plaintiff over his objections. Evidence of the warrant for his arrest issued out of the Domestic Delations Court of the City of New York, Family Court Division, bearing Docket No. 2933-1956, completely refutes and negates his contention that support of the children by the defendant was given by her voluntarily without expectation of repayment by plaintiff or waiver of his legal obligation to support his children. A careful examination and consideration of all of the evidence presented warrants the finding, in my opinion, that plaintiff’s contentions are without merit. There is no showing that he at anytime asked her to give him the custody of the children or that she at anytime refused to do so, or that she removed them over his objections. True, she refused to follow him in the circumstances established, but there is no satisfactory proof that she denied him the children. Since, concededly, she refused to follow him, it taxes credulity that, without her, he wanted to take the children with him, for when he left in December of 1953, the older child was barely two years of age, its unfortunate condition requiring unusual care and attention, and the younger child was only four months old.
The record establishes without contradiction that from January of 1954 up to the time of trial, plaintiff has never contributed to the children’s support and maintenance, has never evinced any interest in them, nor has he ever inquired as to their welfare. He has never sent them anything.
In light of the weight of the credible evidence before me, I am satisfied and of the ultimate conclusion that defendant has sustained her onus of proof and that she is entitled to recover from plaintiff for the support of the issue of the marriage, incurred by her.
A husband has the primary obligation to furnish necessaries for his infant children. A wife, who has applied her separate estate to the purpose of an obligation resting primarily on her spouse, is entitled to recover from him the reasonable amounts which she has so expended out of her separate estate in discharge of his obligation (De Brauwere v. De Brauwere, 203 N. Y. 460). This does not mean, however, that the amount spent by her automatically fixes his obligation. His obligation, to provide his children with the necessaries of life, is to be measured with a view and regard to his pecuniary ability, honestly exercised or to his pecuniary resources (De Brauwere v. De Brauwere, supra).
*467 The ultimate question to he resolved here is how much defendant is entitled to recover. There is a presumption that a father has sufficient means to support his child (1ST. Y. City Dom. Bel. Ct. Act (§ 131). Thus, the burden of proving inability to provide support is on the husband. The fact that he does not work does not, ipso facto, relieve him nor obviate his capacity to work. If he has the ability to work but fails to exert himself, his capacity for earning must nevertheless be considered and estimated. The amount of support for a child may be based not only on actual earnings, but on potential earning power.
Predicated upon his admitted earnings of $4,200 per annum prior to 1961 and of $4,800 per year thereafter, it is fair to assume that the plaintiff’s earning ability from 1954 to 1958 corresponded approximately to what it was in 1958.
Hence, I find and conclude that plaintiff should reimburse defendant at the rate of $1,000 per year from January 1, 1954 through January 16,1958 and at the rate of $720 per year from January 17,1958 to April 12, 1961; in addition thereto the sum of $660 for the funeral expenses of the deceased child.
Accordingly, judgment is awarded in favor of defendant against plaintiff on the counterclaim as hereinbefore stated with appropriate interest.